UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| ROMERO MONTE THOMAS #684159, | Case No. 2:24-cv-00035 |
| Plaintiff, | Hon. Jane M. Beckering<br>U.S. District Judge |
| v. | |
| LELAND JURVA, et al., | |
| Defendants. | |
| _____/ | |

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 12.)

State Prisoner Romero Monte Thomas filed a complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights by refusing to allow him to shower after they sprayed him with a chemical agent during a cell extraction. (ECF No. 1.) Thomas's claims arose on January 29, 2021, while he was confined in the Baraga Correctional Facility. Defendants include Sergeant (Sgt.) Jurva, Corrections Officer (CO) Skytta, retired Assistant Resident Unit Supervisor (ARUS) Lanctot, Qualified Health Professional Monville, and retired Captain (Capt.) Badu.

This is Thomas's second lawsuit asserting an Eighth Amendment deliberate indifference cause of action against these Defendants for allegedly failing to allow him to shower off chemical agent used during a cell extraction. Thomas initially

raised this issue in *Thomas v. Jurva*, No. 2:22-cv-138. There, Thomas alleged that Defendants violated his Eighth Amendment rights by engaging in excessive force during the cell extraction. Thomas also asserted a deliberate indifference claim against these same Defendants for failing to allow him to shower after he was sprayed with a chemical agent.

On January 2, 2024, this Court issued an Opinion and Order in the first lawsuit, granting Defendants' partial motion for summary judgment on the issue of exhaustion of administrative remedies. The Court dismissed Thomas's Eighth Amendment deliberate indifference claim for denying him a shower after he was sprayed with a chemical agent during the January 29, 2021 cell extraction. (*See Thomas v. Jurva*, W.D. Mich. Case No. 2:22-cv-138, ECF No. 43, PageID.314 (granting Defendants' motion for partial summary judgment).[1]) The Court dismissed those claims without prejudice against Defendants Jurva, Skytta, Lanctot, Badu, and Monville due to Thomas's failure to exhaust his administrative remedies prior to filing his lawsuit. Thomas's excessive force claims arising out the cell extraction remain in that case and are pending.

After this dismissal, Thomas submitted a second grievance against Defendants for denying him a shower to wash off the chemical agent after the cell extraction. That grievance was rejected at each step. Thereafter, Thomas filed this second lawsuit.

---

[1] Defendants included this opinion as an attachment to their motion for summary judgment in the instant case. (*See* ECF No. 13-4, PageID.118.)

Defendants now move for summary judgment, asserting that Thomas failed to *properly* exhaust his administrative remedies with respect to his deliberate indifference claim. Thomas makes two arguments to support his claim that he exhausted his administrative remedies. First, Thomas argues that the Court erred in concluding that he failed to exhaust his administrative remedies in the first case. Second, Thomas argues that the Michigan Department of Corrections (MDOC) failed to follow procedure when it rejected his second grievance against Defendants Jurva, Skytta, Lanctot, Badu, and Monville.

In the opinion of the undersigned, Thomas failed to properly exhaust his administrative remedies. On November 29, 2023, Thomas attempted to exhaust his grievance remedies for the January 29, 2021 incident involving the refusal to allow him to shower. The MDOC rejected that grievance as untimely in accordance with the policy. Therefore, it is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof

---

2  The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

"must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where

prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in MDOC Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form

6

within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies

7

regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

Case 2:24-cv-00035-JMB-MV   ECF No. 24, PageID.219   Filed 08/06/24   Page 9 of 13

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

### IV. Analysis

First, Thomas argues that he exhausted his Eighth Amendment deliberate indifference claims against Defendants when he submitted grievance AMF-21-02-0191-26A. This Court has already determined that grievance AMF-21-02-0191-26A *did not* exhaust Thomas's claim that Defendants denied him a shower after he was sprayed with a chemical agent during the cell extraction.

This Court stated previously:

> The PLRA requires prisoners to properly exhaust their administrative remedies prior to filing suit. *Jones*, 549 U.S. at 218-19. For prisoners in Thomas's position, that means properly exhausting the MDOC's grievance procedure. The MDOC's grievance procedure specifically requires inmates filing grievances to state their issues "briefly but concisely," to include the "who, what, when, where, why, [and] how" of their issues, and to provide "[d]ates, times, places and names of all those involved in the issue being grieved." MDOC P.D. 03.02.130 at ¶ S.
>
> Once again, Thomas concedes that grievance AMF-21-02-0191-26A neither named Defendant Monville nor mentioned that Thomas was prevented from showering after he was sprayed with chemical agents on January 29, 2021. Thomas's assertion that he would have told the grievance respondents about the deliberate indifference had they interviewed him is not enough. And even that assertion is dubious where Thomas did not mention the alleged deliberate indifference in his Step II or Step III appeals to grievance AMF-21-02-0191-26A. (ECF No. 35-3, PageID.239.) Ultimately, Thomas's complaints regarding excessive force were insufficient to put the MDOC on notice of the alleged deliberate indifference that occurred thereafter. To nevertheless allow Thomas to pursue his deliberate indifference claim would run afoul of the PLRA. *See Porter*, 534 U.S. at 524-25.

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

9

(ECF No. 13-4, PageID.130-131 (copy of the undersigned's prior opinion and order in W.D. Mich. Case No. 2:22-cv-138)().) Thomas has provided the Court with no reason to revisit this issue.

After Defendants were dismissed without prejudice due to Thomas's failure to exhaust his administrative remedies, Thomas submitted a second grievance against Defendants. This time, Thomas raised the issue that Defendants allegedly denied him a shower to wash off the chemical agent. <u>AMF-23-10-1375-28E.</u> The MDOC rejected the grievance as untimely. The Step I grievance and response are shown below.

> Date Received at Step I 10/25/2023  Grievance Identifier: AMF 2 3 1 1 0 / 1 3 7 5 2 8 E
>
> **Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | THOMAS | 684159 | AMF | 2-110 | 1-29-21 | 10-19-23 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 1-29-21
> If none, explain why. I pleaded with Captain Steve Badu, Sergeant Jurva, after Nurse Monville Denied my request. Delay in this grievance is attributed to the step-1 response within the matter of: AMF-21-02-0191-26a as the agency failed to I'd all parties involved As well due to the fact this matter is currently being litigated : 2:22-cv-138.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. This grievance is being written and submitted against male nurse at the time Jamie Monville. January 29, 2021, I was Gassed by Sgt. Leland Jurva. See. AMF-21-02-0191-26a placed in a (E.R.C.) Emergency Restraint chair and brought over to housing Unit: 2 and taken to a room designated for In-House health care and was seen by Monville pursuant to or rather in accordance with Pd 04.05.112 "Managing Disruptive Prisoners" Paragraph: F Effective: 9/1/2019. I requested of Monville to authorize and instruct Capt. Badu Sergeant Jurva, c/o. Skytta and N. Lanctot to give me a Shower to help mitigate the harmful burning effects as of result of being sprayed with a chemical agent and I was denied a Shower by all involved including by Mr. Monville. The entire matter was filmed by Steve Badu on a hand held audio visual camera.
>
> R. [signature] 684159
> Grievant's Signature
>
> RESPONSE (Grievant Interviewed?  ☐ Yes  ☒ No    If No, give explanation. If resolved, explain resolution.)
>
> This grievance is being rejected as untimely. Grievance rejected in accordance with PD 03.02.130 Prisoner/Parolee Grievances
>
> | Respondent's Signature | Date 10/25/2023 | Reviewer's Signature | Date 10/26/23 |
> |---|---|---|---|
> | P Mayo | A I CRR | C. Duins | ADW |
> | Respondent's Name (Print) | Working Title | Reviewer's Name (Print) | Working Title |

(ECF No. 13-3, PageID.117.)

The rejection was upheld at Steps II and III. (*Id.*, PageID.114-116.)

MDOC policy provides that a grievance shall be rejected if filed in an untimely manner. Policy Directive 03.02.130(J)(5).

11

The Supreme Court held in *Woodford*, 548 U.S. at 92-93, that the PLRA exhaustion requirement requires "proper exhaustion." "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Id.* at 90-95. Proper exhaustion is a precondition to any suit challenging prison conditions. *Id.* Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred.

MDOC Policy Directive 03.02.120(Q) provides that a grievant shall attempt to resolve an issue with the staff member involved within two days after becoming aware of the issue and then file a Step I grievance within five days after making that attempt to resolve the issue. The policy states:

> Q.  Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

(ECF No. 13-2, PageID.89.)

The MDOC rejected Thomas's grievance in accordance with policy. Thomas argues that he made a good faith effort to exhaust his administrative remedies and his untimeliness was not intentional. Unfortunately, Thomas stated in his grievance that the incident occurred on January 29, 2021, but he waited until October 19, 2023, to file a grievance against Defendants. (*See* ECF No. 13-3, PageID.117 (copy of Step I grievance).)

In the opinion of the undersigned, Thomas failed to properly exhaust his administrative remedies.

## V. Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion for summary judgment and dismiss this complaint.

Dated:  August 6, 2024                             /s/ *Maarten Vermaat*
                                                                   MAARTEN VERMAAT
                                                                   U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).